UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**RICHARD LEE GALYAN**,

        Plaintiff,

v.

**OREGON DEPARTMENT OF CORRECTIONS,** *et al.,*

        Defendants.

Civil Case No. 6:11-CV-06301-KI

OPINION AND ORDER

    Richard Lee Galyan
    338 Highway 99 North
    Eugene, Oregon  97402

        Pro Se Plaintiff

    Eric A. Lindenauer
    John C. Rothermich
    Garvey Schubert Barer
    121 SW Morrison Street, 11th Floor
    Portland, Oregon   97204-3141

        Attorneys for Defendant Correctional Health Partners, LLC

Page 1 - OPINION AND ORDER

John R. Kroger
Attorney General
Michael R Washington
Oregon Department of Justice, Trial Division
1162 Court Street NE
Salem, Oregon  97301

      Attorneys for Defendants Gower, Thompson, Parker, McLean, Irving, Shelton, Angelozzi, Fitzpatrick

KING, Judge:

Plaintiff Richard Lee Galyan, formerly a prisoner housed at various Oregon Department of Corrections ("ODOC") facilities, complains that defendants Michael Gower, Frank Thompson, Nurse Parker, Harold McClean, Loretta Irving, R.N., S. Shelton, M.D., Rick Angelozzi, Nurse Fitzpatric, and Jane Doe R.N./L.P.N. (collectively, "ODOC" defendants), along with Correctional[1] Health Partners, a private contracting entity, failed to provide him with timely medical care in violation of the Eighth Amendment.  He also alleges that "Health Services staff and their supervisors" acted in a negligent fashion and he alleges an intentional infliction of emotional distress claim.  Compl. 35.[2]  His allegations arise out of defendants' delay in diagnosing and treating choroid melanoma, which resulted in the surgical removal of his right eye.

The ODOC defendants bring an Unenumerated 12(b) Motion to Dismiss [35] for Galyan's failure to exhaust administrative remedies.  Additionally, Community Health Partners brings a Motion for Summary Judgment [21].

---

[1]Galyan incorrectly refers to the defendant as "Corrections" Health Partners.

[2]Galyan did not number the pages of his Complaint; I refer to the PDF page numbers as they appear in ECF.

Page 2 - OPINION AND ORDER

# FACTS[3]

Galyan was incarcerated at the end of April 2009 and housed at Warner Creek Correctional Facility ("WCCF").  His eyesight was examined by ODOC health services staff in May, August, October and November 2009, at which time he requested an eye examination and complained about deteriorating eyesight and headaches.  He saw a contract doctor, Dr. Graham, in December 2009; Dr. Graham indicated he was "not sure what I can do, we can follow up if it gets worse, maybe another ophthalmolic evaluation may be necessary."  Compl. 18.  Galyan alleges he saw a nurse in February, March, and April 2010 for complaints about his eyesight.[4]  He was transferred to Santiam Correctional Institution ("SCI") on May 20.  A nurse at SCI informed him that he was placed on the list to see an optometrist.  On June 2, he was transferred to Shutter Creek Correctional Institution ("SCCI").  He requested health services for his eye.  The next day, Galyan was seen by a contracting optometrist at SCCI who arranged for Galyan to be seen at the Bay Eye Clinic in town that afternoon.  Galyan was incorrectly diagnosed only with a detached retina.  He was transferred back to SCI on June 16, at which time he was examined again and referred to a specialist.  He was seen on August 11 by doctors at the OHSU Casey Eye Institute who located a tumor and diagnosed choroid melanoma of the right eye, with associated retinal detachment.  They informed him that they needed to remove his eye.  He was transferred to MCCF on August 13, and then back to SCI on August 19.  On August 27, the grievance coordinator received a grievance from Galyan about the delay in treating the melanoma in his

---

[3]The facts are based on the allegations in Galyan's complaint, as well as the documents attached to it and the documents submitted by defendants.

[4]The medical records attached to his complaint support only an April visit.  In a note, staff reports, "My vision in my R eye is v. bad.  It's now worse than when I came here to medical in Dec. 09."  Compl. 19.

Page 3 - OPINION AND ORDER

right eye. On September 3, Nurse Manager Irving responded explaining that his eye care was being directed by the OHSU doctors and that he was scheduled for surgery. He did not appeal this grievance response.

Galyan underwent surgery on September 13.

In November, ODOC informed him that it would not pay for a prosthesis. He was informed of the cost and told he could charge it to his prisoner account. The grievance coordinator received Galyan's grievance about the prosthesis on December 27. On January 18, 2011, Nurse Manager Irving responded to the grievance that he had undergone surgery and that the surgeon had prepped the eye for a prosthesis. She explained that a prosthesis had not been approved by ODOC's Health Services Therapeutic Level of Care ("TLC") committee at the time it had approved surgery. The cost of the prosthesis was $3,300, but Galyan would only be required to pay $2,450. The cost could be charged to his inmate trust account as a debt. She also wrote that the surgeon had not ordered follow-up treatment for the prosthesis, blood work, CT scan, x-ray to monitor the cancer, or continued rehabilitation from surgery. The surgeon had asked to see Galyan for a follow-up six months after the surgery. Galyan appealed Nurse Irving's response, and the appeal was received February 4. ODOC Medical Director Steve Shelton, M.D., responded on March 8 by reiterating what Nurse Irving had written. He reported that ODOC had confirmed with the VA that it would not pay for the prosthesis, but that the prosthesis was still available to Galyan at the discounted rate. Galyan did not appeal this response.

In the meantime, Galyan filed tort claim notices on January 28 and February 18, 2011. His claims were denied on June 17 and 22. He was told the "State Services Division Risk Management does not oversee the Corrections Health Services personnel or their decisions

Page 4 - OPINION AND ORDER

regarding inmate health care" and that "[n]o liability was found on the part of the State of Oregon, its officers, agents or employees." Washington Decl. Exs. 1, 2.

Galyan was released on post-prison supervision on January 27, 2012.

## LEGAL STANDARDS

I.  Legal Standards Relevant to the ODOC Defendants' Motion to Dismiss

The Prison Litigation Reform Act ("PLRA") states:  "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The PLRA exhaustion requirement demands "proper exhaustion," which means compliance with all deadlines and "other critical procedural rules."  Woodford v. Ngo, 548 U.S. 81, 90, 93 (2006).

The PLRA's exhaustion requirement creates an affirmative defense that must be raised and proven by defendants.  Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  Because the failure to exhaust nonjudicial remedies is not jurisdictional under the PLRA, the defense is treated as a matter in abatement and is subject to an unenumerated motion to dismiss rather than a motion for summary judgment.  The court may look beyond the pleadings and decide disputed issues of fact.  If the prisoner has not exhausted nonjudicial remedies, the court should dismiss the claim without prejudice. Id. at 1119-20.

Grievances are processed in accordance with the ODOC Administrative Rules for Inmate Communication and Grievance Review System.  Inmates are encouraged to talk to first line staff as their primary way to resolve disputes and, if not satisfied, to use a written inmate

communication form. OAR 291-109-0100(3)(a). If this does not resolve the issue, the inmate may file a grievance. OAR 291-109-0140(1)(a).

Inmates may grieve: (1) the misapplication of or lack of any administrative directive or operational procedure; (2) unprofessional behavior or action directed toward an inmate by an employee or volunteer; (3) any oversight or error affecting an inmate; (4) a program failure; and (5) the loss or destruction of property. OAR 291-109-0140(2)(a)-(f). A grievance must be filed within 30 days of the incident. OAR 291-109-0150(2).

An inmate may appeal a grievance response to the functional unit manager by completing a grievance appeal form and filing it with the grievance coordinator within fourteen days of receipt of the response. OAR 291-109-0170(1)(a) and (b). The inmate will receive a return receipt. OAR 291-109-0170(1)(a). If still not satisfied, the inmate may appeal the functional unit manager's decision by completing another grievance appeal form and filing it with the grievance coordinator within fourteen days of receipt of the response. OAR 291-109-0170(2)(c). This final appeal is decided by an assistant director having authority over the issue, constituting the final administrative ruling. OAR 291-109-0170(2)(a)-(c).

II.     Legal Standards Relevant to Correctional Health Partners, LLC's Motion for Summary Judgment

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the

Page 6 - OPINION AND ORDER

court "must view the evidence on summary judgment in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party." Nicholson v. Hyannis Air Service, Inc., 580 F.3d 1116, 1122 n.1 (9th Cir. 2009) (citation omitted).

## DISCUSSION

I.    ODOC Defendants' Motion to Dismiss

The ODOC defendants move to dismiss Galyan's complaint, asserting that Galyan failed to timely appeal his grievances. Galyan filed two grievances, one related to the medical treatment of his eye and one related to his request for a prosthesis, but he did not appeal the first grievance and he did not file a second appeal on the second grievance.

Galyan concedes he "technically did stop the grievance process[.]" Galyan Resp. Mot. to Dismiss 1. He, instead, sought remuneration for his loss from the Oregon Department of Administrative Services, Inmate Claims Unit. He writes that the process is like a game of "Three Card Monte"–requiring inmates with no legal training to "pick the right avenue to protect himself from mistreatment." Pl.'s Decl. 1 [50]. He also writes generally that prisoners are reluctant to document complaints against ODOC staff for fear of reprisal.

Requiring exhaustion here–including a timely appeal–satisfies the rationale behind the requirement, which is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Brown v. Valoff, 422 F.3d 926, 936 (9th Cir. 2005). Nothing about the grievance process was unclear. Furthermore, Galyan has not indicated nor offered any evidence that he personally was afraid of retribution; indeed, he filed two grievances and appealed one of them. He simply neglected to pursue his second appeal. "If a prisoner had full opportunity and ability to file a grievance timely, but failed to do so, he has

not properly exhausted his administrative remedies." Marella v. Terhune, 568 F.3d 1024, 1028 (9th Cir. 2009).

I do note that ODOC's Rules Manual precludes an inmate from grieving "[c]laims or issues for which the inmate has filed a Notice of Tort with the Oregon Department of Administrative Services, Risk Management Division[.]" Casper Decl. Att. 2, at 12 (OAR 291-109-0140(3)(h)). Accordingly, it is possible that the administrative remedies could be rendered "unavailable" to him. See White v. Hall, 384 F. App'x 560, 561 (9th Cir. 2010) (district court erred; grievance/appeals process unavailable when inmate's appeal rejected because he had filed a tort claim). However, here, contrary to ODOC's treatment of White's grievance appeal, the ODOC defendants responded to Galyan's grievance appeal while the review of his tort claim notice was occurring simultaneously. Compare Hanson Decl. Att. 4, at 11 (March 8, 2011 grievance appeal response) with Compl. 46 (Feb. 4, 2011 receipt of tort notice). Accordingly, based on the evidence before me, nothing precluded Galyan from filing his second appeal, in compliance with the grievance procedures. Galyan's Eighth Amendment claim against the ODOC defendants is dismissed without prejudice for failure to exhaust administrative remedies.

The ODOC defendants request dismissal of the entire complaint, but they have not addressed Galyan's negligence and intentional infliction of emotional distress claims.

Nevertheless, I dismiss these claims without prejudice. Although the court has supplemental jurisdiction over Galyan's state law claims under 28 U.S.C. § 1367(a), because I have dismissed all claims over which the court has original jurisdiction the "balance of factors . . . point[s] toward declining to exercise jurisdiction over the remaining state-law claims." Acri v. Varian Assoc., Inc., 114 F.3d 999, 1001 (9th Cir. 1997); see also 28 U.S.C. § 1367(c)

Page 8 - OPINION AND ORDER

(discretionary to retain jurisdiction; factors to consider include whether court has dismissed federal claims).

In sum, since Galyan failed to exhaust his administrative remedies, I must dismiss his Eighth Amendment claim without prejudice.  Furthermore, I decline to exercise supplemental jurisdiction over his remaining state claims.[5]  Galyan's claims are best addressed in state court.

II.     Correctional Health Partners, LLC's Motion for Summary Judgment

Galyan's claim against Correctional Health Partners is that it participated in the TLC committee decisions regarding the approval and denial of his health care.  He alleges that its policies and negligence lead to the loss of his eye and spread of melanoma.  He alleges an Eighth Amendment claim, and may also allege an intentional infliction of emotional distress claim against it.[6]

---

[5] Galyan has 180 days from the judgment entered in this case in which to file an action in state court alleging the same state claims in order to avoid dismissal on statute of limitations grounds.  ORS 12.220.

[6] In his complaint, he clearly alleges the negligence claim against only "Health Services staff and their supervisors."  Compl. 35

Page 9 - OPINION AND ORDER

Correctional Health Partners moves for summary judgment[7] on the basis that it is simply the "third-party administrator" which provides "claims administration services to the Oregon Department of Corrections." Archambeau Decl. ¶ 3. It also explains that while ODOC has a TLC committee which reviews requests for healthcare services, "Correctional Health Partners does not participate on the TLC Committee and does not review authorization requests for medical services." Id. at ¶ 4. It further submits it "had no role in approving or denying requests for medical services" by Galyan. Id. at ¶ 5. Finally, it contends its "sole role with respect to Mr. Galyan was to process claims for payment for care which had already been provided pursuant to the DOC's authorization. Correctional Health Partners approved payment of all of the claims which it processed." Id. at ¶ 6.

Galyan does not dispute these assertions. He responds, instead, with language from the tort claims denial letters, in which the State Services Division-Risk Management responded, in denying his tort claim, that it "does not oversee the Corrections Health Services personnel or their decisions regarding inmate health care." Washington Decl. Exs. 1, 2. He argues that this

---

[7]The Ninth Circuit recently held that a pro se prisoner plaintiff must receive a summary judgment advice notice *at the time* a motion for summary judgment is filed and not before. Woods v. Carey, 2012 WL 2626912 (9th Cir. July 6, 2012). Here, I sent a summary judgment advice notice on December 14, 2011. Fewer than two months later (compared with over a year in Woods), Correctional Health Partners, LLC filed its motion for summary judgment. I also sent a pro se prisoner advice order after receiving the ODOC defendants' motion to dismiss but before Galyan filed his response to the motion for summary judgment, explaining Galyan's obligation to respond with specific facts in declarations, depositions, answer to interrogatories, or documents, that contradict the facts in the defendants' declarations. This advice order gives substantially the same direction as the summary judgment advice notice. Additionally, I have considered every document filed by Galyan (Woods' briefing had been stricken by the district court). Finally, and most importantly, given that is indisputable Correctional Health Partners' played no role in approving or denying requests for medical care and approved payment of all claims, there are no facts Galyan could present that could change the outcome on Correctional Health Partners' motion for summary judgment.

Page 10 - OPINION AND ORDER

statement undermines Correctional Health Partners' statement that it provides essentially administrative services. He also points to a statement The Oregonian made describing the company as a "'third party administrator' of the prison health care system, processing medical claims, managing care provided to inmates outside the prison, and providing access to medical providers." Pl.'s Decl. Ex. 5, at 2.

Galyan's response demonstrates his confusion between defendant contractor Correctional Health *Partners*, LLC and *Oregon Department of Corrections* Health *Services* personnel. His allegations have to do with the ODOC medical staff's delay in his medical care, and their failure to follow his physician's instructions, as well as the TLC committee's denial of payment for the prosthesis. Notably, he does not complain about the care he received outside of prison. It is indisputable that Correctional Health Partners did not participate in the TLC committee, that it only processed claims for payment of care, and that it approved payment of all the claims it processed. Accordingly, assuming that Correctional Health Partners could be liable for a constitutional violation under Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658 (1978), Galyan cannot show that the company was deliberately indifferent to a serious medical need based on a custom or policy. See Denson v. Gillispie, No. 2:10-cv-525-RCJ-LRL, 2011 WL 1582441, *3 (D. Nev. Apr. 25, 2011); Connick v. Thompson, 131 S. Ct. 1350, 1359-60 (2011) (plaintiff must prove "action pursuant to official municipal policy" caused injury and "conscious disregard for the consequences of [the] action"). Correctional Health Partners is entitled to judgment as a matter of law on Galyan's Eighth Amendment claim.

For the reasons set forth above, I decline to exercise supplemental jurisdiction over any intentional infliction of emotional distress claim Galyan may be asserting against Correctional Health Partners, LLC.

## CONCLUSION

For the foregoing reasons, the ODOC defendants' Unenumerated 12(b) Motion to Dismiss [35] is granted and all the claims against the ODOC defendants are dismissed without prejudice. In addition, Correctional Health Partners, LLC's motion for summary judgment [21] is granted; the Eighth Amendment claim against it is dismissed with prejudice and the remaining state law claims are dismissed without prejudice.

IT IS SO ORDERED.

Dated this       12th       day of July, 2012.

                                            /s/ Garr M. King
                                            Garr M. King
                                            United States District Judge